UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TIMOTHY MARQUEZ,**

      **Plaintiff,**　　　　　　　　　　**Case No. 18-cv-10435**

  v.　　　　　　　　　　　　　　　　**District Judge Robert H. Cleland**

**COMMISSIONER OF**　　　　　　　　**Magistrate Judge Mona K. Majzoub**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Timothy Marquez seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.      RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, and that the case be dismissed in its entirety.

## II. PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on April 25, 2012, alleging that he has been disabled since October 28, 2011. (TR 309–323.) The Social Security Administration initially denied Plaintiff's claims on June 29, 2012. (TR 108–125.) On January 23, 2014, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Kathleen Scully-Hayes. (TR 67–104.) On June 10, 2014, ALJ Scully-Hayes issued an unfavorable decision on Plaintiff's claims. (TR 133–141.) On January 13, 2016, the Appeals Council overturned that decision because ALJ Scully-Hayes "d[id] not properly apply the grid rules based on" Plaintiff turning 50 (i.e. "closely approaching advanced age") since the date of his application. (TR 148.) Instead of awarding benefits, the Appeals Council remanded for consideration of "whether claimant has acquired any skills that are transferrable to other occupations under the guidelines in Social Security Ruling 82-41." (TR 149.)

On May 31, 2017, Plaintiff appeared for a hearing on remand before ALJ Lynn Ginsberg. (TR 38–66.) On July 5, 2017, ALJ Ginsberg issued an unfavorable decision on Plaintiff's claims. (TR 19–31.) Plaintiff requested review by the Appeals Council, which was denied on December 8, 2017. On February 6, 2018, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 14; docket no. 17.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 14, pp. 4–12.) In addition, the ALJ summarized Plaintiff's medical record (TR 21–29), and Defendant adopted the ALJ's recitation of the facts (docket no. 17, p. 4).

Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since October 28, 2011, the alleged onset date. (TR 21.) In addition, the ALJ found that Plaintiff had the following severe impairments: "obesity; multiple knee surgeries, including total right knee replacement; arthritis of the left knee; history of right femur fracture; degenerative joint disease of the right hip; impingement of the right hip; degenerative disc disease of the lumbar and thoracic spine; and diabetes mellitus." (*Id*.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 22.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), subject to the following non-exertional limitations:

- Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently.
- Plaintiff can stand and/or walk for two hours out of an eight-hour workday with regular breaks.
- Plaintiff can sit for six hours out of an eight-hour workday with regular breaks.
- Plaintiff cannot perform right knee foot pedals and can perform only occasional pedal work with the left lower extremity.
- Plaintiff requires the use of a hand-held assistive device for walking over 100 yards or on uneven terrain.
- Plaintiff cannot climb ladders, ropes, or scaffolds.

- Plaintiff cannot crawl.
- Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.
- Plaintiff should have only occasional exposure to extreme cold.
- Plaintiff can have no exposure to excessive vibration such as construction vibration.
- Plaintiff requires a sit/stand option allowing him to sit or stand at the workstation, but he would not be off task more than 10 percent of the workday.

(TR 22.) Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including cashier, assembler of small products, and assembler of electrical accessories. (TR 31.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since the alleged onset date. (*Id.*)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

5

work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.   Analysis

Plaintiff contends that the ALJ erred in three respects. First, Plaintiff asserts that the ALJ failed to properly weigh the medical opinion evidence. (Docket no. 14, pp. 14–20.) Second, Plaintiff alleges that the ALJ wrongly determined that Plaintiff did not meet Listings 1.02 and 1.03. (*Id.* at 20–22.) Third, Plaintiff argues that the ALJ failed to fully consider his mental impairments. (*Id.* at 22–26.)

#### 1. Medical Opinion Evidence

Plaintiff first contends that the ALJ failed to properly consider opinion evidence from four doctors, two of whom were Plaintiff's treating physicians.

##### a. Dr. Aqel

Plaintiff asserts that the ALJ failed to provide good reasons for giving only little weight to the opinion of his treating physician Dr. Hakima Aqel and that the ALJ failed to discuss the factors listed in 20 C.F.R. § 404.1527(c). (*Id.* at 17–18.)

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). But the ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide "good reasons" for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017); 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p (S.S.A. July 2, 1996).

In a one-page opinion dated October 18, 2013, Dr. Aqel opined that "[Plaintiff's] limitations significantly erode the occupational base of sedentary jobs, to the extent that there are no [*sic*] a significant number of jobs remaining in the economy that [Plaintiff] can perform." (TR 1059.) The ALJ gave Dr. Aqel's opinion only little weight, explaining that the opinion "requires consideration of not only medical factors but also vocational factors with respect to which this medical source is not an expert" and was also "inconsistent with the record as a whole, including

7

the diagnostic imaging of the claimant's right knee and right hip that showed fairly benign findings." (TR 28.)

Dr. Aqel's opinion is conclusory and devoid of medical reasoning. *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir.1984) (The ultimate issue of disability is reserved to the Commissioner.). Accordingly, the ALJ provided good reasons for giving it only little weight and did not err by declining to discuss every factor listed in 20 CFR § 404.1527(c).

### b. Dr. Cox-Johnson

Similarly, Plaintiff asserts that the ALJ failed to give good reasons for assigning only little weight to the opinion of his treating physician Dr. Salena Cox-Johnson. (Docket no. 14, pp. 18–19.)

In an opinion dated June 25, 2012, Dr. Cox-Johnson opined that Plaintiff's right hip condition caused him to be "unable to stand for greater than 30 minutes, unable to walk, [unable to ascend or descend] stairs/ladders, [and] [u]nable to perform jobs that require physical activity." (TR 1193.)

The ALJ gave this opinion only little weight, concluding that the proposed limitations conflicted with Dr. Cox-Johnson's observations that Plaintiff demonstrated "4/5 motor strength in the right hip" as well as "normal motor strength in the left lower extremity and bilateral knees and ankles" and that Plaintiff "did not have any functional loss or impairment of the lumbar spine." (TR 28.) In addition, the ALJ determined that Dr. Cox-Johnson's opinion was "not supported by the objective diagnostic findings in the record," including a June 2016 MRI of Plaintiff's right hip that showed "no acute abnormalities" (TR 1460) and a February 2017 x-ray of Plaintiff's right knee that depicted a "stable appearing prosthesis" and "no acute abnormality" (TR 1504).

8

On review of the record in this case, the ALJ gives good reasons for declining to adopt Dr. Cox-Johnson's opinion regarding the limitations caused by Plaintiff's right hip condition.  The opinion that Plaintiff is "unable to perform jobs that require physical activity" is conclusory and inappropriately encompasses matters within the purview of the vocational expert.  The opinion that Plaintiff cannot stand "for greater than 30 minutes" is vague (e.g., over what amount of time?) and not necessarily inconsistent with the RFC, which allows Plaintiff a sit/stand option.  And the opinion that Plaintiff is unable to walk and/or ascend or descend stairs conflicts with Plaintiff's testimony that he can walk "short distances" (TR 45) and can climb stairs "very slowly" with the use of a handrail (TR 84).

In a separate opinion dated June 25, 2012, Dr. Cox-Johnson opined that Plaintiff's right knee condition rendered him "unable to lift heavy objects, bend at [the] knee, stoop, kneel, [and] stand [for] greater than 30 minutes."  (TR 1206.)

The ALJ did not expressly consider this opinion.  As discussed above, the ALJ provided good reasons for declining to adopt the 30-minute standing limitation.  Similarly, the assertion that Plaintiff is "unable to lift heavy objects" is vague and not necessarily inconsistent with the RFC, which limits Plaintiff to lifting 20 pounds occasionally and 10 pounds frequently.

The ALJ fails to give good reasons for declining to adopt the proposed kneeling and stooping limitations.  Dr. Cox-Johnson observed that Plaintiff had limited range of motion and reduced strength in his right knee.  (TR 1196, 1198, 1200.)  This conflicts with the ALJ's observation that Plaintiff demonstrated normal motor strength in both knees.  (TR 28.)  However, failure to adopt the proposed kneeling and stooping limitations is harmless error because the VE testified that the jobs he identified could be performed by a claimant that is unable to stoop, kneel

9

and/or bend at the knee. (TR 64.) *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009) ("[W]e review decisions of administrative agencies for harmless error.").

### c. Dr. Bernabe

Plaintiff asserts that the ALJ's decision to give only some weight to the opinion of consulting physician Dr. Vicente Bernabe is not supported by substantial evidence.

In an opinion dated May 23, 2016, Dr. Bernabe opined that Plaintiff needed a cane for "balance and support during all ambulation." (TR 1432–1438.) The ALJ determined that Plaintiff "does not require a cane for all ambulation." (TR 28.) Substantial evidence supports the ALJ's determination not to adopt that proposed limitation.

In June of 2013, Plaintiff reported that he "walks 1 mile per day." (TR 931.) Treatment notes from a January 12, 2017 physical therapy session reflect that Plaintiff "ambulates with no AD," is "not limited with ambulation" and is "independent with ADLs." (TR 1536.) Likewise, in February of 2017, Dr. Christina Ratanatharathorn "encouraged/discussed [with Plaintiff] the health benefits of 30-60 minutes of aerobic exercise (i.e., brisk waling, jogging, biking, swimming, etc.) 3-4 times a week." (TR 1572.)

Accordingly, the ALJ did not err by concluding that Plaintiff "requires the use of a hand-held assistive device [only] for walking over 100 yards or on uneven terrain." (TR 22.)

### d. Dr. Bente

On June 29, 2012, Single Decisionmaker Sylvia Ernst conducted an RFC analysis and determined that Plaintiff had the capacity to, *inter alia*, occasionally kneel and crawl. (TR 121–123.) In a "case analysis" dated August 28, 2012, Dr. Neal Bente reviewed Plaintiff's medical records and concluded that "[t]he RFC by S. Ernst . . . is reasonable except the kneeling on the right knee and crawling should be [reduced from occasionally to] never." (TR 1235.)

The ALJ gave only some weight to Dr. Bente's opinion, adopting the crawling limitation, but concluding that Plaintiff could kneel "because there is no evidence of progressive muscle weakness in the lower extremities." (TR 28.) That conclusion is not supported by substantial evidence and contrary to the opinions of Dr. Cox-Johnson and Dr. Bente, who each concluded that Plaintiff could not kneel due to limited range of motion in his right knee.

Accordingly, the ALJ erred by determining that Plaintiff had the capacity to kneel occasionally, but (as noted above) that error is harmless because the VE testified that the jobs he identified could be performed by a claimant that is unable to stoop, kneel and/or bend at the knee. (TR 64.)

    2. *Listing 1.02 and 1.03*

Plaintiff asserts that the ALJ erred by determining that he did not meet the criteria of Listing 1.02 and by failing to expressly consider whether he met Listing 1.03. (Docket no. 14, pp. 20–22.)

An ALJ must find a claimant disabled if his impairment meets or medically equals a "listed" impairment in Appendix 1 to Subpart P pf Part 404 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L.Ed.2d 967 (1990). But the ALJ need not "address every listing" or "discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013). The ALJ should discuss the relevant listing where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under that listing. *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990).

To raise a "substantial question" as to whether he has satisfied a listing, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. *See id.* "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432–33 (6th Cir. 2014).

In the present case, the ALJ concluded that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, [*sic*] nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (TR 22.)

Plaintiff asserts that he meets both Listing 1.02 (major dysfunction of a joint) and Listing 1.03 (reconstructive surgery of a major weight-bearing joint). (Docket no. 14, p. 21.) In support, Plaintiff refers to medical records documenting stiffness, swelling, and limited range of motion in his right knee, which cause him to limp, to need a cane for balance and to have difficulty walking. (*Id.*)

As Defendant notes, both Listing 1.02 and 1.03 require a showing that the impairment creates an "inability to ambulate effectively as defined in [§] 1.00B2b," which is defined as follows:

> (1) …Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public

12

> transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § 404, Subpt. P, App. 1 § 1.00(B)(2)(b).

Because Plaintiff can ambulate without the use of an assistive device that "limits the functioning of both upper extremities," the ALJ properly determined that he does not meet Listing 1.02 or Listing 1.03.

### 3. *Mental Impairments*

Finally, Plaintiff contends that the ALJ failed to consider his mental impairments. (Docket no. 14, pp. 22–26.) Nothing in the record suggests that Plaintiff has any mental impairments.

Plaintiff asserts that he "was diagnosed with PTSD, anxiety, and depression." (*Id.* at 22.) But the records cited in support suggest exactly the opposite. (TR 1299, 1356, 1388, 1412.) In these treatment notes, Plaintiff's doctors record a "negative" symbol next to depression, PTSD, and anxiety. (*Id.*) Moreover, during the 2014 hearing, Plaintiff denied having "[a]ny mental health issues" or "any problems with depression." (TR 85.)

Because the record contains no evidence that Plaintiff suffers from mental impairments—and, *a fortiori*, no evidence that mental impairments limit Plaintiff's functional abilities—the ALJ did not err by declining to discuss mental impairments.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, and that the case be dismissed in its entirety.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 1, 2019    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 1, 2019    s/ Leanne Hosking
Case Manager